IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DR. ROSANDRA DAYWALKER | § | CA. NO_____ |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | |
| | § | |
| UNIVERSITY OF TEXAS MEDICAL | § | |
| BRANCH AT GALVESTON, AND | § | |
| DR. BEN G. RAIMER, | § | |
| IN HIS OFFICIAL CAPACITY | § | |
| DEFENDANT. | § | JURY TRIAL REQUESTED |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF THE DISTRICT COURT:

**Preliminary Statement**

1.  This is an employment lawsuit brought for violations of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended ("Title VII"), the Americans with Disabilities Act ("ADA"), 42 USC § 12101 et seq., as amended, the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq., as amended, and the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq., as amended ("Section 504").

2.  During all times mentioned in this Complaint, Plaintiff, Rosandra Daywalker, M.D., also known as Dr. Rosandra Walker ("Dr. Daywalker"), was and is still a US citizen. Dr. Daywalker is a Black female with a disability who engaged in protected activity.

3.  During all times mentioned in this Complaint, Defendant, University of Texas Medical Branch at Galveston ("UTMB"), was and is still an employer, engaged in an industry affecting commerce. It is also an educational institution that received federal funding during all times included in the factual statement in this Complaint. UTMB may be served through its Interim

President, Dr. Ben G. Raimer ("Dr. Raimer") at 301 University, 100 Administrative Building, Suite 6, Galveston, Texas 77555.  Dr. Raimer may be served in his official capacity at the same address.

**Jurisdiction**

4. Jurisdiction is invoked pursuant to 42 U.S.C. § 1331 based on a federal question.

5. Declaratory, injunctive, and equitable relief is sought pursuant to Title VII, the ADA, FMLA and Section 504.

6. All conditions precedent to filing this lawsuit have been met. Dr. Daywalker received a Right to Sue Notice dated February 4, 2020 on her Title VII, and ADA claims and has timely filed this lawsuit.  Dr. Daywalker had been employed by UTMB for several years and had worked at least 1,250 hours in the 12 months preceding her need for leave under the FMLA.

7. Compensatory damages are sought pursuant to Title VII, the ADA and Section 504.

8. Costs and attorney's fees may be awarded pursuant to the ADA, Title VII, Section 504 and FMLA.

**Venue**

9. This action properly lies in the Southern District of Texas, Galveston Division, pursuant to 28 U.S.C.§ 1391(b) because the unlawful employment practices and other misconduct were committed in this judicial district.

**Factual Statement**

10. Dr. Daywalker became a medical doctor in May 2015. In June 2015, she matched to UTMB to complete a 5-year residency program in Otolaryngology ("the Program"). She was the only Black resident in the Program for all years referenced in this complaint.

11. When she began the Program, Dr. Susan McCammon (Caucasian) was the Program Director. She had no problems under Dr. McCammon. In or about April 2017, Dr. Wasyl Szeremeta (Caucasian) became the new Program Director. Dr. Szeremeta had been with UTMB for a year or so.

12. During an Otolaryngology Retreat in June 2016, Dr. Szeremeta made certain comments or generalizations about race that Dr. Daywalker felt were inappropriate in a group environment. Specifically, Dr. Farrah Siddiqui (Asian/Middle Eastern), then Assistant Program Director, commented that Otolaryngology was the least favorite specialty among Black medical students. Dr. Szermeta replied, "if they (Blacks) are not interested, we cannot force them to apply." To her, his reply was unnecessary and showed his lack of interest in making Otolaryngology more diverse and made others think she was there for reasons that had nothing to do with her achievements. For example, Dr. Robert Darling (Caucasian), a Resident then and now Attending Physician, texted her during the Retreat that since Black Otolaryngologists were so scarce, she should feel basically bulletproof at UTMB.

13. At times, Dr. Szeremeta made statements or comments that revealed a racial bias toward or insensitivity against Black residents, patients, or people. He asked Dr. Daywalker on multiple occasions her opinion when it came to topics related to Black culture or conduct. For instance, he asked her why do Black people use the emergency room for their health care. He also made hostile comments before or during surgery about Hispanics and illegal immigrants. He said Hispanics felt entitled and did not want to learn English. In a Morbidity and Mortality Conference, Dr. Yang was giving a presentation on a child who was a patient. As background, Daywalker has never been present where the race of a patient or relative of a patient was mentioned in a M&M presentation. During or after Dr. Yang's presentation, Dr. Szeremeta interrupted and stated that the mother of

the child accused him of not giving enough pain medication because the child was Black. Dr. Yang did not comment. Dr. Daywalker later informed the group that literature and studies showed there was a disparity in medication and treatment for Black patients. At times, Dr. Szeremeta treated Dr. Daywalker like she was a representative to explain what he perceived as Black issues.

14.     Dr. Szeremeta became Daywalker's Program Director in or about April 2017. She noticed that he started scrutinizing her performance. The prior Program Director, Dr. McCammon, had always been helpful in providing constructive feedback on her overall progress. She was doing well, and her performance evaluations reflected the same. In contrast, Dr. Szeremeta manufactured reasons to reprimand her. On multiple occasions, he accused her of not closing her notes fast enough. At that time, there was no set time period to close notes. However, her notes were completed within a reasonable period of time (usually no later than 72 hours) after clinic or surgery. When she asked another resident about the time period for completion of notes, he stated that he would complete his notes within three days. When she applied for leave, Dr. Szeremeta stated the leave was done improperly. He told her that leave should be placed in UTMB's Kronos time system. When she asked two other residents if they had requested leave through Kronos, they both stated that they had not. Dr. Szeremeta did not reprimand them to her knowledge. He appeared to try to cast her into an "angry Black woman" stereotype by falsely accusing her of being angry and looking like she wanted to assault him. Dr. Daywalker has never had any temper related issues at work and many have stated that she speaks softly and is mild mannered. Dr. Szeremeta also unnecessarily delayed her facial plastic surgery rotation which caused her to miss the majority of the rotation. She lost the opportunity to learn more about the subspecialty (i.e., facial plastic surgery), to network and to receive information that could advance her career.

15. Under Dr. McCammon, Daywalker was rated "meets expectations" in every area. However, under Dr. Szeremeta in August 2017, she was rated "requires attention" in multiple areas including medical knowledge, professionalism, and interpersonal and communication skills. Many of the alleged accusations by Dr. Szeremeta were inconsistent with the comments he made. By the end of 2017, she still was not rated "meets expectations" in all areas.

16. In May 2018, Daywalker was placed on remediation. Remediation is similar to a performance improvement plan. Even though there was no objective basis for the remediation, she still adhered to the remediation terms as requested. However, she did not receive resources or assistance for improvement or a concrete length of time for remediation. After receiving the remediation plan, she reported harassment and discrimination based on race and gender to UTMB for an internal investigation. During the alleged investigation, Dr. Siddiqui completed her performance evaluation and rated her as "requires attention" in every area. She felt this was blatant retaliation for reporting Dr. Szeremeta.

17. Dr. Daywalker's health began to decline in 2017 and worsened in or about July 2018 after she received the remediation reprimand and the worst performance evaluation since she had been in the program. She was seeing a therapist due to the hostile work environment and ongoing discrimination and retaliation. Due to her health, she requested personal leave. She did not know at the time that this may have been an FMLA qualifying illness. Even after knowing her reason for leave, UTMB did not inform her of her FMLA rights. Instead, it used her request for leave as punishment. It drafted the terms of her leave in a letter in August 2018. If she wanted UTMB to approve leave, she would have to agree to repeat her third year of residency. As background, Dr. Lara Reichert left on maternity leave and was not required to repeat an entire year. By that time, Dr. Reichert was a fourth-year resident. UTMB also demanded that Dr. Daywalker complete

assignments related to work while on leave. UTMB also denied her a complete facial plastic rotation. This would have been her subspecialty when she completed residency. Without a complete rotation, she missed opportunities to obtain a fellowship in facial plastic surgery. She believes this will adversely affect her career opportunities, salary and benefits in the long-run.

18.     Dr. Harold Pine (Caucasian) brought the leave of absence letter to a local restaurant. The letter was drafted by Dr. Vicente Resto (Hispanic). Dr. Daywalker's husband was present at the meeting with Dr. Pine. During the meeting, Dr. Pine told her that if she did not sign the leave letter, she could be terminated. He also stated that management did not believe that she would perform well enough to return as a 4th year resident. When she asked for the reason, he said it was just how management felt, and there was a sizeable group that did not think she would finish the program. He admitted that there could be individuals who did not want her to finish. He encouraged her to sign the leave letter to avoid any additional harassment and discrimination. She specifically remembered him saying, "it is what it is." He also stated it was not a good situation for her, but the letter permits her to complete the residency. This only made her situation worse, as she was under extreme duress to sign the agreement or risk losing her job. She was in no condition to work, but she reported to work the next day in fear of losing her job.

19.     Dr. Daywalker also spoke with Dr. Christopher Thomas a few days after her meeting with Dr. Pine in August 2018. She mentioned Dr. Pine's comments. He said that she had not been promoted to a PGY4 (resident year 4) because Dr. Szeremeta did not sign the required documents. However, she called the American Board of Otolaryngology in October 2018 and was told that UTMB reported her as a PGY4. Dr. Thomas explained the tense situation and said that he "was trying to put a silver lining to a dark cloud" for her. He discussed a facial plastic fellowship and told her that it would be better for her to repeat the third year. When she asked if this was the

fairest way to handle the leave, he did not answer, say yes, or say no; instead, he said it was a way she could "get a break from being in the midst of all of this." He said this would permit faculty to get a chance to "reflect and for everything to cool off." She told him that she felt the leave letter was punitive. He did not deny this comment. When she stated that she wanted FMLA, he pushed back and started discouraging FMLA leave. He started stating all the hurdles that she must jump through to get FMLA leave. She believes this was an attempt to make her leave legally unprotected, to terminate her, or to cause future adverse actions against her. Clearly, this showed he was fully aware of the harassment, retaliation, and discrimination.

20. After speaking with her attorney, the undersigned attorney intervened on her behalf and drafted a letter requesting FMLA, among other things. Shortly after, she completed the FMLA paperwork, and ultimately FMLA was approved. Dr. Daywalker planned to return to work on November 6, 2018 which was the end of her FMLA leave. She was also going to request reasonable accommodations under the ADA. UTMB was placed on notice of her need for a reasonable accommodation only days before Daywalker was demoted without cause and constructively discharged.

21. Dr. Daywalker returned to work on November 6, 2018. She had an early morning meeting with Szeremeta and two others who informed her that she was being demoted from a PGY-4 to a PGY-3. Dr. Szeremeta claimed the demotion was warranted because Dr. Daywalker may allegedly put patients at risk. She adamantly denies the claim and any facts used to support it. She has never been given any type of verbal or written warning that she had put patients at risk.

22. Dr. Daywalker requested that UTMB's HR or legal department investigate the demotion pursuant to page 26 of UTMB's Handbook. Under the FMLA, Daywalker should have been reinstated to the same position of PGY-4.

23.     Such retaliation was apparent under Title VII, ADA, Section 504 and FMLA. Defendants effectively constructively discharged her from the program.  As such, they have caused damage to her professional reputation and career opportunities in plastic surgery, her intended specialty upon completion from the residency program.

24.     Dr. Daywalker believes that she has been harassed, discriminated against, and retaliated against by UTMB due to her race, gender, disability, and engaging in protected activity.  She has been constructively discharged from her position.

25.     The retaliation continued even after constructively discharging her.  Dr. Szeremeta and others reported information to third parties that was not true or was misleading to interfere with Dr. Daywalker's duty to mitigate damages.

**Causes of Action**

26.     Dr. Daywalker incorporates, as if re-alleged, paragraphs 1-25.

27.     Because Dr. Daywalker was harassed, discriminated against, and retaliated against due to her race, disability/handicap, and/or her engagement in protected activity, Defendants have intentionally, maliciously, and willfully violated Title VII, the ADA, the FMLA and Section 504.

28.     But for her engaging in protected activity under Title VII, the ADA, the FMLA and Section 504, Defendants would not have retaliated against her by making her work environment so bad a person in her position would feel forced to resign.

29.     Dr. Daywalker reported the harassment on multiple occasions. UTMB allegedly conducted an investigation.  Each time it sided with management and found no harassment.  Thus, the harassment continued.

**Prayer for Relief**

30.     Wherefore, Daywalker prays that this Court:

    a. declare the conduct engaged in by Defendants a violation of Dr. Daywalker's rights;

    b. enter judgment against Defendants;

    c. enjoin Defendants from engaging in such conduct;

    d. reinstate Dr. Daywalker to the position of PGY-4;

    e. award Dr. Daywalker equitable relief of back salary and fringe benefits up to the date of termination and prejudgment interest for that entire period, or front salary and benefits accrual in lieu of reinstatement;

    f. award Dr. Daywalker compensatory damages;

    g. award Dr. Daywalker costs and attorney's fees; and

    h. grant such other relief as it may deem just and proper.

Dr. Daywalker demands a jury trial.

Respectfully submitted,

    /s/   Victoria Plante-Northington
VICTORIA PLANTE-NORTHINGTON
Texas Bar No. 00798436
Southern District No. 21235
PLANTE LAW FIRM, P.C.
5177 Richmond Avenue
Suite 1140
Houston, Texas 77056
Telephone: (713) 526-2615
Facsimile: (713) 513-5176
Email: victoria@plantelawfirm.com
ATTORNEY FOR PLAINTIFF
ROSANDRA DAYWALKER, MD