Case 3:20-cv-00099   Document 86   Filed on 09/09/21 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
September 09, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DR. ROSANDRA DAYWALKER, | § § | |
| Plaintiff. | § § | |
| VS. | § § | CIVIL ACTION NO. 3:20-cv-00099 |
| UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON, ET AL. | § § § § | |
| Defendants. | | |

## ORDER AND OPINION

Before me are a series of discovery disputes. The parties submitted letters to the Court outlining the various outstanding issues for which no agreement can be reached. *See* Dkts. 65 and 67. After reviewing those letters, I immediately set an oral hearing to promptly address the concerns raised by both sides. At that oral hearing, which took place on August 31, 2021, and lasted more than an hour, I issued a number of oral rulings. Those rulings covered issues outlined in the parties' respective letters, as well as additional discovery issues raised for the first time that morning. At the close of the hearing, I invited the parties to supplement their briefing to help me fully evaluate the merits of the parties' positions concerning the impact of the Family Educational Rights and Privacy Act of 1974 ("FERPA") on the production of documents in this case. Those supplemental briefs have been filed, *see* Dkts. 76 and 79, and I have carefully considered those briefs and their exhibits.

## BACKGROUND

Dr. Rosandra Daywalker ("Daywalker") filed this lawsuit in March 2020 against the University of Texas Medical Branch at Galveston ("UTMB") and Dr. Ben Raimer ("Raimer"), UTMB's President *ad interim*, in his official capacity. In her First Amended Complaint, Daywalker notes that she became a medical doctor

in May 2015. She then entered UTMB's five-year residency program in Otolaryngology (the "Program"). Daywalker was the only black resident in the Program.

Daywalker alleges that Dr. Wasyl Szermeta ("Szermeta"), the Program Director, made certain comments that revealed a racial bias toward black residents like herself. Daywalker also claims that her race and gender played a central role in her poor performance reviews. In November 2018, Szermeta informed Daywalker that she was being demoted for putting patient safety at risk. Daywalker adamantly denies that she ever endangered any of her patients.

In her lawsuit, Daywalker claims "that she has been harassed, discriminated against, and retaliated against by UTMB due to her race, gender, disability, and engaging in protected activity." Dkt. 18 at 8. As a result of this repeated conduct, Daywalker avers that "[s]he has been constructively discharged from her position." *Id.*

Defendants filed a motion to dismiss the case, which United States District Judge Jeffrey V. Brown granted in part and denied in part. *See* Dkt. 29. Judge Brown found that "Daywalker has not stated a claim of gender discrimination in the form of either hostile work environment or constructive discharge, nor can she recover money damages from Raimer in his official capacity. She can, however, proceed with all her other claims and requested relief." *Id.* at 10.

## ANALYSIS

There are two issues I want to address in this Order and Opinion: (1) Defendants' objection to the production of documents based on the Health Insurance Portability and Accountability Act ("HIPAA"); and (2) Defendants' objection to discovery requests based on FERPA.

A.  **HIPAA**

Daywalker has requested the production of documents relating to Defendants' claim that Daywalker was fired, in part, because her actions put patient safety at risk. *See* Requests for Production Nos. 1, 45, 46, and 47.

2

Defendants concede that such documents are relevant to the issues at dispute in this lawsuit but object to their production under HIPAA. Defendants' reliance on HIPAA in refusing to produce relevant documents is misplaced.

Passed by Congress and signed into law in 1996, HIPPA governs the dissemination of a patient's health-related information. The statute embodies the federal government's recognition of "the importance of protecting the privacy of health information in the midst of the rapid evolution of health information systems." *South Carolina Med. Assoc. v. Thompson*, 327 F.3d 346, 348 (4th Cir. 2003). Generally, HIPAA prohibits a health care provider from disclosing a patient's protected health information. *See* 45 C.F.R. § 164.502(a).

HIPAA is not, however, an absolute bar to discovery. *See Jacobs v. Conn. Cmty. Tech. Colls.*, 258 F.R.D. 192, 197 (D. Conn. 2009). The federal law simply creates a procedure for obtaining and using protected medical information in litigation. *See Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 925–26 (7th Cir. 2004).

HIPAA's regulations contain two provisions that specifically authorize Defendants to release the protected health information Daywalker seeks in this case.

First, Defendants are authorized to disclose protected health information in response to a court order. *See* 45 C.F.R. § 164.512(e)(1)(i) ("A covered entity may disclose protected health information in the course of any judicial or administrative proceeding . . . [i]n response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order."). Accordingly, I specifically order that Defendants produce all documents responsive to Requests for Production Nos. 1, 45, 46, and 47. This order compelling the disclosure of information satisfies the applicable regulations.

Second, HIPAA expressly permits the disclosure of protected health information "in the course of any judicial proceeding . . .[i]n response to a . . . discovery request," so long as the parties have agreed to, or requested, that the

3

Court enter "a qualified protective order." 45 C.F.R. § 164.512(e)(1)(ii)(B); *see id*. § 164.512(e)(1)(iv)–(v). A HIPAA-qualified protective order should prohibit the use or disclosure of the protected health information for any purpose other than the litigation and require the return or destruction of the protected health information (including all copies) at the end of the litigation or proceeding. *See id*. § 164.512(e)(1)(ii)(B). It is my understanding that the parties already have an appropriate HIPAA-qualified protective order in place. As such, this provides an independent reason why the responsive documents must be produced.

Accordingly, Defendants' HIPAA objections are overruled. All documents responsive to Requests for Production Nos. 1, 45, 46, and 47 must be produced by Friday, September 17, 2021.

**B.     FERPA**

In response to 13 discovery requests propounded by Daywalker, Defendants assert an objection under FERPA. The thrust of the objection is that Daywalker's discovery requests seek "'education records' and other student-related personally identifiable information protected by" FERPA. Dkt. 65-1 at 3. Daywalker asks me to overrule the FERPA objections and allow her access to information relating to non-party UTMB medical residents.

To properly evaluate this discovery dispute, it is imperative to briefly discuss FERPA, a statute enacted by Congress in 1974. FERPA's "purpose is to ensure access to education[] records for students and parents and to protect the privacy of such records from the public at large." *Student Press L. Ctr. v. Alexander*, 778 F. Supp. 1227, 1228 (D.D.C. 1991). *See also* 120 Cong. Rec. 39862 (1974) ("The purpose of the Act is two-fold—to assure parents of students . . . access to their education records and to protect such individuals' rights to privacy by limiting the transferability of their records without their consent."). "Education records" are defined as:

> those records, files, documents, and other materials which (i) contain information directly related to a student; and (ii) are maintained by

4

an educational agency or institution or by a person acting for such agency or institution.

20 U.S.C. § 1232g(a)(4)(A).

FERPA provides that no funds should be made available to an educational institution which has a policy or practice of permitting the release of a student's education records (or personally identifiable information contained in those records) without written consent. *See* 20 U.S.C. § 1232g(b)(1). "FERPA does not provide a privilege that prevents the disclosure of student records. Rather, by threatening financial sanctions, it seeks to deter schools from adopting policies of releasing student records." *Ragusa v. Malverne Union Free Sch. Dist.*, 549 F. Supp. 2d 288, 291 (E.D.N.Y. 2008) (quotation omitted). *See also Garza v. Scott and White Mem'l Hosp.*, 234 F.R.D. 617, 624 (W.D. Tex. 2005) ("By its plain terms, FERPA does not create an evidentiary privilege . . . [and] documents covered by FERPA are indeed discoverable in the context of a civil action.").

An educational institution may disclose educational records without a student's consent if the disclosure is made to comply with a court order. *See* 20 U.S.C. § 1232g(b)(2)(B). To obtain such a court order, the party seeking disclosure "is required to demonstrate a genuine need for the information that outweighs the privacy interests of the students." *Ragusa*, 549 F. Supp. 2d at 292 (quotation omitted). Importantly, "a party seeking disclosure of education records protected by FERPA bears a significantly heavier burden to justify disclosure than exists with respect to discovery of other kinds of information, such as business records." *Id.* (cleaned up).

### 1. Does FERPA Apply to Medical Residents?

The first question I must address is whether FERPA even applies here. FERPA protects "information directly related to a student." 20 U.S.C. § 1232g(a)(4). Defendants take the position that medical residents are students for the purposes of FERPA. Daywalker strongly disagrees.

Medical residents are doctors in training. They have graduated from medical school, been awarded a Doctor of Medicine degree, and now are training to be a particular type of doctor. "Residents often spend between 50 and 80 hours a week caring for patients, typically examining and diagnosing them, prescribing medication, recommending plans of care, and performing certain procedures." *Mayo Found. for Med. Educ. & Rsch. v. United States*, 562 U.S. 44, 48 (2011). "Residents are generally supervised in this work by more senior residents and by faculty members known as attending physicians." *Id.*

To determine whether medical residents are "students" as that term is defined in FERPA, I heed the words of the Fifth Circuit: "The scope of the term 'student' must be considered within the context of the specific agreement or statute before the court." *Univ. of Tex. Sys. v. United States*, 759 F.3d 437, 444 (5th Cir. 2014). So, I turn to FERPA's text, which defines the term "student" as "any person with respect to whom an educational agency or institution maintains education records or personally identifiable information." 20 U.S.C. § 1232g(a)(6). An "educational agency or institution" is defined as a public or private agency or institution which is the recipient of funds under any program administered by the Secretary of the U.S. Department of Education. *See id.* at § 1232g(a)(3). UTMB is a recipient of such funds, and thus qualifies as an "educational agency or institution" under the statute.

Although medical residents are paid a stipend for their efforts, "[i]t is well-known that the primary purpose of a residency program is not employment or a stipend, but the academic training and the academic certification for successful completion of the program." *Davis v. Mann*, 882 F.2d 967, 974 (5th Cir. 1989). "The certificate, like the diploma, tells the world that the resident has successfully completed a course of training and is qualified to pursue further specialized training or to practice in specified areas." *Id.* Following this logic, the Fifth Circuit has held on several occasions that medical residents are to be considered students rather than employees in the context of due process. *See Ekmark v. Matthews,* 524

F. App'x 62, 63–64 (5th Cir. 2013); *Shaboon v. Duncan*, 252 F.3d 722, 729 (5th Cir. 2001); *Davis*, 882 F.2d at 974.[1] Because a medical residency is undoubtedly an academic undertaking that allows doctors to further their education and training in the medical field, I conclude that medical residents are students for purposes of FERPA. Other district courts across this great nation have found that FERPA applies to medical residents, and I see no reason to chart a new course. *See Jun Yu v. Idaho State Univ.*, No. 4:15-CV-00430-REB, 2017 WL 1158813, at *2–3 (D. Idaho Mar. 27, 2017); *Craig v. Yale Univ. Sch. of Med.*, No. 3:10-CV-1600 JBA, 2012 WL 1579484, at *2 (D. Conn. May 4, 2012); *Mackenzie v. Ochsner Clinic Found.*, No. CIV.A.02-3217, 2003 WL 21999339, at *5 (E.D. La. Aug. 20, 2003).

### 2. Has Daywalker Demonstrated a Genuine Need for Records Relating to Other Medical Residents?

Having determined that medical residents are entitled to FERPA's protections, I must now decide whether to permit the disclosure of various records relating to non-party medical residents. As noted, a party seeking the disclosure of education records must show a genuine need for the information that outweighs the medical resident's privacy interests. *See Ragusa*, 549 F. Supp. 2d at 292.

Defendants claim that Daywalker fails to "specifically reference any of the discovery requests at issue, nor does she explain or demonstrate with any detail how the specific information requested is relevant to her claims—much less so important that it outweighs the privacy interests of students at UTMB." Dkt. 79 at 1. While Daywalker's briefing is certainly not a picture of clarity, I have carefully reviewed the discovery requests in dispute and find them directly relevant to the claims at issue in this lawsuit.

---

[1] Admittedly, there are some situations in which medical residents are treated as employees. *See Mayo Foundation*, 562 U.S. at 59–60 (holding that medical residents are employees for purposes of a Treasury Department regulation requiring Social Security and Medicare taxes to be withheld from medical residents' paychecks); *Univ. of Tex. Sys.*, 759 F.3d at 444 (medical residents are not students under agreement exempting students from Federal Insurance Contributions Act taxes). But those decisions are based on the particular contractual agreement or governmental regulation involved.

One method by which Daywalker may raise an inference of discrimination is to show that she was treated less favorably than similarly situated employees outside of her protected class. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995). To that end, Daywalker has requested the personnel files and related documents of medical residents whom she believes would be appropriate "comparators" for Title VII purposes. "Personnel files are generally discoverable in Title VII litigation, as they could provide circumstantial evidence of pretext, such as revealing disparate treatment of coworkers who were guilty of infractions more serious than that of the plaintiff." *Bounds v. Cap. Area Fam. Violence Intervention Ctr., Inc.*, No. CA 14-802-JJB-RLB, 2016 WL 1089266, at *4 (M.D. La. Mar. 18, 2016).

Daywalker contends that she desperately needs the requested comparator information to help establish her disparate-treatment claims. In response, Defendants complain that Daywalker has failed to show that any of the non-party medical residents are similar to her. In my view, Defendants' argument fails to take into account that the purpose of discovery is, in part, to help identify the universe of proper comparators. *See Wards Cove Packing Co. v. Antonio*, 490 U.S. 642, 657 (1989) (favoring "liberal civil discovery rules" in the context of employment-discrimination claims, giving plaintiffs "broad access to employers' records in an effort to document their claims").

Daywalker's requests for production and interrogatories seeking comparator information are directly relevant to her claims of discrimination. As a result, I think it is appropriate to allow the disclosure of such material, especially since comparator information is routinely disclosed in Title VII cases. Because of the likely importance of these records to the threshold issues in the case, I further find that Daywalker has demonstrated a genuine need for the information that outweighs the privacy interests of the non-party medical residents. *See Jun Yu*, 2017 WL 1158813, at *3 (ordering the production of personnel files of medical residents in a national-origin-discrimination case); *Craig*, 2012 WL 1579484, at *2

(ordering the production of personnel files of medical residents in a racial-discrimination case). Defendants' FERPA objections are, therefore, overruled.

Before producing any student's "education records," Defendants are required by FERPA and its accompanying regulations to notify students affected by my order and afford them the opportunity to object. *See* 20 U.S.C. § 1232g(b)(2)(B); 34 C.F.R. § 99.31(a)(9)(i). Defendants are thus ordered to provide such notice by Wednesday, September 15, 2021. The notice shall advise students that they have until Friday, September 24, 2021, to assert any objection to the disclosure and the grounds for such objection. Defendants' counsel shall immediately forward any objections they receive to Daywalker's counsel and the Court. I will promptly rule on any objections. Unless an objection is granted, Defendants shall produce responsive documents and fully supplement the pertinent interrogatories by Friday, October 1, 2021.[2]

SIGNED this 9th day of September 2021.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

[2] I am well aware that the discovery period in this case ends on September 17, 2021. That deadline remains, with the sole exception that Defendants are given until October 1, 2021, to provide the documents and information originally withheld based on a FERPA objection. I note that this case has been pending since March 2020, and Daywalker had more than a year to conduct discovery and raise any discovery-related issues with the Court. Although Daywalker waited to submit this discovery dispute for the Court's consideration until just a few weeks before the discovery window closed, I have swiftly addressed the relevant issues while, at the same time, giving each side a full opportunity to present oral argument and submit supplemental briefing.