IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DR. ROSANDRA DAYWALKER<br>*Plaintiff,*<br><br>v.<br><br>UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON, AND DR. BEN G. RAIMER, IN HIS OFFICIAL CAPACITY<br>*Defendants.* | § § § § § § § § § § | No. 3:20-CV-00099 |

# DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

As shown in Defendants' opening brief, Plaintiff Dr. Rosandra Daywalker cannot make out a prima facie case for discrimination or retaliation and Defendants have unrebutted legitimate reasons and/or affirmative defenses for all of her claims. In her response brief, Daywalker fails to meaningfully engage with Defendants' arguments and instead—as she has improperly done for most of this litigation—uses a large portion of her platform to smear and launch ad hominem attacks on Defendants and their employees. She also tries to manufacture a fact issue by repeatedly embellishing or misstating the factual record. But the key facts in this case are not in dispute. Most notably, the undisputed evidence shows that (1) the alleged adverse actions in question were academic decisions that did not impact Daywalker's pay at UTMB, (2) Daywalker had repeated issues with timely completing medical notes, (3) her alleged comparator had different performance issues and was not on remediation, (4) she did not report the alleged harassment, despite UTMB's anti-harassment policy, until June 2018,

and UTMB took prompt remedial action in response to her allegations, and (5) she did not encounter race-based insults, slurs, or physical intimidation as part of her purported hostile work environment. These undisputed facts by themselves are dispositive of Daywalker's claims.

Further, Daywalker's response abandons several of her claims both explicitly (her remediation and post-employment claims) and by failing to respond to Defendants' arguments and evidence (her hostile work environment and constructive discharge claims, and Defendants' *Faragher-Ellerth* defense). Most notably, she essentially concedes her hostile work environment claim (and by extension her constructive discharge claim) by acknowledging that it is "practically impossible" for her to meet Fifth Circuit binding precedent without more egregious and pervasive harassment—which she concedes she does not have. ECF 125 at 36.

Ultimately, without actual evidence of discrimination or retaliation, Daywalker's case boils down to her subjective belief that she was treated unfairly. The undisputed evidence belies that argument, but even if UTMB was incorrect in its determinations—it was not—that point is still irrelevant to the question of whether discriminatory or retaliatory animus caused the actions. *Deines v. Tex. Dep't. of Protective and Regulatory Servs.*, 164 F.3d 277, 278 (5th Cir. 1999) ("Whether an employer's decision was the correct one, or the fair one, or the best one is not a question within the jury's province to decide. The single issue for the trier of fact is whether the employer's [action] was motivated by discrimination."). And all of the actions at issue fall squarely within UTMB's academic and medical judgment, which is entitled to judicial deference. For the reasons stated herein, and the reasons stated in the opening brief, judgment as a matter of law is warranted on Plaintiff's suit.

**I.      Objections and Response to Daywalker's Statement of Facts**

In the absence of competent evidence of discrimination or retaliation, Daywalker relies on inflammatory accusations, name calling, unsupported factual allegations, and irrelevant documents related to the political opinions of witnesses. None of which are competent summary judgment evidence.

Perhaps most egregiously, Daywalker smears her former supervisor, Dr. Szeremeta, by repeatedly calling him, among other things, a "Klu Klux Klan" sympathizer. ECF 125 at 8. To be clear, there is no evidence supporting such an inflammatory and false accusation. The only evidence[1] potentially related to the allegation that in 2020—two years after Daywalker resigned—a UTMB student group sought to organize a wellness-society using the name of an 1800s UTMB student group, the Jolly Bone Jugglers Society. ECF 125, Ex. 30 at 202:15-23. The students asked Dr. Harold Pine to be their faculty advisor for the potential group. *Id.* at 201:23-202:2. Knowing nothing about the group, Pine researched them in the library and found they described themselves as a "group designed to break down class prejudices and to promote a feeling of universal brotherhood." *Id.* at 204:5-7. He did not find any information connecting the group to the KKK or racism. *Id.* at 210:16-21. A student presented the potential group to faculty, including Dr. Heman Ackah (who Plaintiff's counsel also represents, *id.* at 205:3-4). Heman Ackah objected to the group citing concerns of the group's racist past,

---

[1] Daywalker alleges that Szeremeta refused to answer whether he was a member of the KKK, but he was instructed not to answer the question by his counsel due to harassing and inappropriate conduct by Plaintiff's counsel during the deposition. ECF 125, Ex. 24 at 304:8-25. Defendants moved for a protective order related to that and other inappropriate questions and conduct pursuant to Federal Rule of Civil Procedure 30(d)(3)(A). ECF 88. In any event, he testified at the deposition that he was not a part of any political or social organizations besides the Ukrainian National Association. ECF 125, Ex. 24 at 24:4-25:4.

including that it used a skull and crossbones symbol.[2] *Id.* at 205:24-206:4. In response to Heman Ackah's concerns, the faculty, including Pine, immediately pulled down the request to bring the group back. *Id.* at 206:15-20. And as the underlying evidence makes abundantly clear, Szeremeta was not involved with the society or presenting the picture of the skull and cross bones. *See, e.g., id.* at 203:17-22 (Q: "Dr. Szeremeta, was he involved? A: Not particularly, no. Q: [] was he involved in the presentation and presenting it to the people on a Zoom conference? A. No, [a student] was the only one presenting."). ECF 125, Ex. 25 at 302:22-312:15 (Szeremeta was against bringing back the group). Plaintiff's counsel is aware of the lack of evidence for this odious allegation, yet she still attempts to publicly smear Szeremeta with it. Ex. 25 at 166:22-25 ("A. No, it wasn't Dr. Szeremeta that was involved. Q: Dr. Pine. A: That's correct."). Defendants object to the allegations as irrelevant and request that the Court strike and disregard these portions of the brief.

Defendants also object to the Facebook posts and evidence concerning cultural and political issues in 2020-21 (e.g., ECF 125, Exs. 12, 14-17, and 38) as irrelevant. Defendants also object to Daywalker's placing whole copies of transcripts, discovery responses, and documents on relevancy grounds and ask that the Court disregard any pages of the exhibits that are not specifically cited to in the parties' briefing. Finally, Defendants object to the following exhibits on hearsay and foundation grounds (Ex .1 paragraphs 3, 5, 7, 12, 19, 20; Ex, 2; Ex. 10; Ex. 11).[3]

---

[2] Daywalker introduces a picture of a skull and cross bones, in Exhibit 38, but the exhibit does not resemble the photo the student shared when presenting about the group. ECF 125 at 242:13-243:10. The Jolly Bones Jugglers picture resembled a pirate-like, Jolly Roger skull and crossbones. *Id.* at 203:15-17.

[3] Daywalker makes ludicrous and unfounded accusations that Defendants have "destroyed" evidence,

4

## II. Daywalker Abandoned or Concedes Several of Her Claims.

### a. Daywalker disavowed her remediation and post-employment claims.

In her response, Daywalker makes clear that she is not bringing claims related to remediation or post-employment retaliation. ECF 125 at 28 n. 3 (remediation) and 33 (post-employment). Accordingly, any such claims are explicitly waived.

### b. Daywalker does not respond to the arguments that her hostile work environment claims fail as a matter of law.

Defendants argued that Daywalker's retaliatory and race-based hostile work environment claims fail as a matter of law because (1) a retaliatory hostile work environment claim has not been recognized by the Fifth Circuit; (2) Daywalker could not show her purported harassment was connected to protective activity; (3) the multiple changes in supervisors were intervening acts that severed her claims (and thus the only timely claims do not encompass the alleged 2016-17 harassment); (4) most of the alleged harassment was work-related critiques, performance-based actions, or non-work, after-the-fact Facebook posts that do not support a hostile work environment claim; and (5) that Daywalker's allegations, even if true, do not meet the demanding standards the Fifth Circuit has set for severe or pervasive harassment. ECF 121 at 29-35.

---

not produced documents, or fabricated documents. ECF 125 at 17, 27, 30. These accusations are false and, notably, Daywalker does not cite any evidence in support of them. *Id.* Defendants produced responsive documents to Daywalker involving thirty residents, which included responsive resident files (which did not include all thirty residents because Daywalker did not seek all thirty in discovery, *see* ECF 65-1). In any event, if Daywalker truly believed any of these allegations occurred, the proper course would be to raise them with the Court (with evidence) and seek a continuance of summary judgment through Federal Rule 56 (d). Daywalker has not done so in the year-and-a-half this case has been pending, and she cannot preserve these issues through unsupported accusations now.

5

In response, Daywalker's argument consists of three paragraphs that do not include a single case cite and do not address Defendants' arguments except to say in wholly conclusory fashion that a fact issue exists because "Black jurors or judges" will see the unidentified "statements or act" as "racist" while "non-Black judges or jurors" may not. ECF 125 at 36. Daywalker also does not specifically identify what purported acts or statements she contends forms the basis for her claims (citing broadly to entire deposition transcripts, and discovery responses) or how that evidence supports her claims. At this stage of the litigation, however, it is simply not enough to allege that a fact issue exists. Rather to meet her burden, Daywalker "is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claims." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Daywalker does not even attempt to meet that requirement.

The Court should find that by not responding to Defendants' arguments on her hostile work environment claims that she concedes or does not oppose the arguments. *See* S.D. Tex. L.R. 7.4. This is particularly true as to Defendants' arguments related to her retaliatory hostile work environment claim as she does not address this claim or attempt to connect the purported harassment (which allegedly spanned between 2016-18) to her May, August, and November 2018 protected activity. *See Cargo v. Kan. City S. Ry. Co.*, Civ. Action No. 05-2010, 2014 U.S. Dist. LEXIS 6516, at *13 (W.D. La. Jan. 17, 2014) ("[Plaintiff] failed to address her claim for hostile work environment/ constructive discharge in her response to Defendant's Motion for Summary Judgment. She therefore concedes this argument.").

This is also true of her race based hostile work environment claim as she does not dispute (1) UTMB changed her supervisor multiple times within the relevant timeframe, and

6

(2) those changes in supervisors where intervening acts for a potential hostile work environment (or constructive discharge) claim. *See* ECF 121 at 31-32 (Defendants' argument). Indeed, while Daywalker's introduction and statement of facts contain a laundry list of complaints, almost all of them took place prior to Szeremeta becoming her supervisor (*Id.* at 10-12 (recounting 2016 incidents)); involved co-workers or co-students[4] (*id.*) or took place *years after* Daywalker voluntarily resigned from UTMB (*id.* at 1-2 and Exs. 12, 14-17 and 38 involving events and Facebook posts that purportedly took place in 2020). For those reasons, none of these purported incidents can form the basis for her hostile work environment claim.

Of course, Daywalker does not specifically identify what harassment she contends supports her claims. Likewise, she does not attempt to explain how the evidence establishes a hostile work environment under existing caselaw or address Defendants' arguments and caselaw to the contrary *See* ECF 125 at 32 (Defendants' arguments). Ironically, the closest Daywalker comes to engaging with caselaw is to acknowledge that her claim *does not* meet binding Fifth Circuit precedent. ECF 121 at 36.

Daywalker's failure to identify specific evidence of harassment or explain how it supports her claims is fatal to her response. Indeed, if Daywalker cannot take the time to respond to Defendants' arguments and specifically identify the evidence that allegedly supports her claims, Defendants and the Court should not have to dig through hundreds of pages of seemingly indiscriminately filed exhibits to find Plaintiff's evidence. *Ragas*, 136 F.3d at 458 (Rule 56 does not impose a duty on the Court to "sift through the record in search of

---

[4] Any claim based on co-worker harassment is not before the court, untimely, and unmeritorious because Daywalker concedes that she did not report any harassment in 2016 or 2017. *See* ECF 121, Ex. L at 94:6-13; *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012).

7

evidence" to support the nonmovant's opposition to summary judgment.) *de la O v. Housing Auth. of City of El Paso, Texas*, 417 F.3d 495, 501 (5th Cir.2005) ("Judges are not like pigs, hunting for truffles buried in briefs."). This is especially true given that she concedes that the unspecified harassment, whatever it is, does not meet Fifth Circuit binding precedent regarding severe or pervasive harassment.

### c. Daywalker Also Does Not Oppose Most of Defendants' Argument that Her Constructive Discharge Claim Fails as a Matter of Law.

Daywalker's constructive discharge claim fails as a matter of law for the same reasons as her hostile work environment claims. In response, Daywalker's one paragraph argument once again fails to cite to *any* caselaw or exhibits and does not respond to most of Defendants' arguments. Like her hostile work environment claims, Daywalker's failure to respond to the motion should be treated as non-opposition under Local Rules. Nevertheless, as Defendants explained in their opening brief, Daywalker's constructive discharge claim also fails for several independent reasons.

First, because Daywalker's constructive discharge and hostile work environment claims are predicated on the same allegedly harassing working environment. If the hostile work environment claims fail as a matter of law, the constructive discharge claim also must be dismissed. ECF 121 at 36-37 (Defendants' argument). Daywalker says "[t]his is not true" but she does not cite to any caselaw in support of that opinion. ECF 125 at 37. She also does not attempt to explain her position in light of the multiple Fifth Circuit opinions cited by Defendants that take a contrary position. As the Fifth Circuit has plainly stated, a plaintiff must show a "greater degree of harassment than that required by a hostile working environment." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). And, accordingly,

8

if the alleged harassment does not meet the Fifth Circuit's precedent for a hostile work environment, it also fails to establish a constructive discharge claim. *See Vallecillo v. U.S. Dep't of Hous. & Urb. Dev.*, 155 F. App'x 764, 768 (5th Cir. 2005).

Second, even if this were not the case, Daywalker does not produce evidence to establish her claim. As an initial matter, Daywalker does not meet five factors as she alleges—without any citation to evidence—in her argument. As noted, despite her speculation about future pay decisions, there is no evidence she was demoted or had a pay reduction. Rather, the undisputed evidence shows she was promoted in August 2018 and received a pay raise. ECF 121 at Ex. D-3. Nor can she show that she would be placed under a younger supervisor and there is no evidence that her direct supervisor (a faculty member) would be younger than her. And the "degrading or menial" or reduction in duties is incompatible with the undisputed fact that she would continue with third year academic rotations. *Id.* at Ex. A-2.

In any event, Daywalker does not cite to any caselaw to support that her allegations would be enough to establish a constructive discharge claim. Rather, the cases cited by Defendants in similar but more egregious situations hold otherwise. ECF 121 at 36 *(*collecting cases).

Third, Daywalker does not dispute Defendants' evidence that it took prompt remedial action after she submitted her complaints by changing her supervisors. She also does not attempt to explain how her situation is different from other similar situations where courts have found that "a reasonable person would simply not feel 'compelled to resign' when her employer offered to discuss other work arrangements with her." *Id.* at 37 (quoting *E.E.O.C. v. Kohl's Dep't Stores, Inc.*, 774 F.3d 127, 134 (1st Cir. 2014).

### d. Daywalker does not respond to Defendants' *Faragher-Ellerth* defense.

As discussed above, if Daywalker's hostile work environment claims fail as a matter of law, her constructive discharge claim does as well. Because of Defendants' unrebutted *Faragher-Ellerth* defense, the opposite is also true. Defendants' motion established the defense by showing that it had an anti-harassment policy (ECF 18 at ¶ 17; ECF 121 C-1 at 18); that Daywalker did not take advantage of preventive or corrective opportunities by not reporting the alleged harassment until June 2018 (ECF 121 at Ex. L, 94:6-13); and that UTMB took prompt remedial actions after learning of the allegations (*id.*, Ex. G at ¶ 9). Daywalker did not address this argument or evidence in her response. Accordingly, because the only tangible employment action alleged is the constructive discharge, if the Court finds that claim fails it must also find that the hostile work environment claims fail, regardless of whether Daywalker can show a fact issue of severe or pervasive harassment. *See Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 479 (5th Cir. 2008).

### III. Daywalker's Discrete Discrimination and Retaliation Claims Fail as a Matter of Law.

### a. Daywalker cannot establish a prima facie case.

After abandoning her remediation and post-employment claims, Daywalker is only left with the allegation that UTMB "demoted" her by holding her back academically while on remediation and the effect of that on her academic rotations.[5] But as shown in the opening brief, these discrimination and retaliation claims fail for several reasons.

---

[5] As explained in the opening brief, to the extent Daywalker is complaining about the impact of UTMB's decision to hold her back academically on her rotations, that is not a separate claim but is rather a consequence of UTMB's earlier decision. *See* ECF 121 at 24.

10

First, UTMB's decision to hold her back academically is not an adverse employment action. Notably, Daywalker does not dispute, and actually introduces evidence showing, that the decision did not impact her pay or promotion to a fourth-year resident for employment purposes. *See* ECF 125 at Ex. 21. Instead, Daywalker speculates—but cites to no specific, competent evidence—that the decision will impact future pay decisions. *Id.* at 29, 37. But this argument ignores the fact that she could have graduated the program on time if she successfully passed the updated remediation. *See* ECF 121, Ex. C at ¶ 6 ("had Dr. Daywalker stayed in the program and successfully completed her remediation, she would have been progressed to a PGY-4 academically"). And, in any event, an allegation that an employment action may have some effect on future pay decisions does not convert it to an actionable adverse employment action. *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 708 (5th Cir. 1997) Ultimately, Daywalker simply cannot convert an academic action into an employment action.

Second, for discrimination purposes, Daywalker cannot show that any similarly situated comparator was treated more favorably than her under nearly identical circumstances. Notably, comparators with "different work rule violations or different disciplinary records" are not considered to be in nearly identical circumstances. *Hockman v. Westward Comm., LLC*, 282 F.Supp.2d 512, 527–28 (E.D. Tex. 2003). Daywalker asserts that another resident is comparator, but the evidence she cites clearly distinguishes the two. ECF 125 at 28.

The evidence shows that a resident was having issues in the operating room and UTMB considered options such as "progress her…remediate her and have her repeat a year . . . and no-renew/terminate her." *Id.* at Ex. 8. But, unlike Daywalker in August 2018 (again the issue is focused on the decision to hold her back rather than place her on remediation (which

11

Daywalker abandons as a claim)), there is no evidence to show this resident was already on remediation when UTMB considered taking action (indeed the consideration to "remediate her" establishes she was not). Further, Daywalker's evidence shows that the resident had *different* performance issues compared to her. Compare *id.* with ECF 121 at Ex. A-1 and 2.

Third, for retaliation purposes, Daywalker cannot show a causal connection between her protected activities and the decision to hold her back academically. As noted in the motion, the timing of UTMB's decision defeats Daywalker's Family Medical Leave (FMLA) and disability claims because the decision was made and communicated to her prior to the FMLA request and request for accommodations. *See* ECF 121 at 25, n. 5; ECF 125 at Ex. 10 (FMLA leave requested on August 9, 2018). In an attempt to manufacture causation, Daywalker appears to assert that the decision to hold her back was not made until November 2018. ECF 125 at 31. But the Supreme Court's decision in *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980) makes clear that for timing purposes, an adverse action occurs when the "decision is made and [the employee] was notified." And the evidence conclusively shows that occurred on August 8, 2018. *See* ECF 121 at Ex. A-2 (August 8, 2018). For that reason alone, Daywalker's discrimination and FMLA[6] claims must be dismissed.

For the Title VII claim, Defendants noted that the Fifth Circuit has previously found that a nearly identical 69-day gap "is not, by itself, enough to show a causal connection based upon temporal proximity alone." *Amsel v. Tex. Water Dev. Bd.,* 464 Fed.Appx. 395, 401–02 (5th Cir. 2012) (unpublished). Daywalker does not attempt to distinguish the case. But perhaps

---

[6] Daywalker oddly asserts that Defendants did not move to dismiss her FMLA claim, ECF 125 at 38-29, but Defendants clearly did. ECF 121 at 23-27. As the evidence, in Exhibit A-2 shows, Daywalker returned from leave to the same position she had before she left.

more problematic for Daywalker is that she does not establish that the majority of the decisionmakers at the faculty level or Dr. Thomas Blackwell had the requisite knowledge of her protected activity. *See* ECF 125 at 32 (asserting only that Szeremeta, Resto, Pine and Chaaban had knowledge). [7]

### b. Daywalker has not met her burden to show UTMB's legitimate reasons are false and pretext for discrimination or retaliation.

Defendants articulated the legitimate, non-discriminatory and non-retaliatory reasons for all of its challenged actions. ECF 121 at 27-29 and Ex. A-1 and 2. Under the burden-shifting framework employed under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), in order to defeat summary judgment, Daywalker must establish that each of Defendants' articulated reasons are false and pretext for intentional discrimination or retaliation. *Lawrence v. Univ. of Texas Medical Branch at Galveston,* 163 F.3d 309, 312-13 (5th Cir.1999). And as is the case here, where an employer articulates multiple reasons, the plaintiff "must put forward evidence rebutting *each* of the nondiscriminatory reasons the employer articulates." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (emphasis added). Daywalker's argument fails for multiple reasons.

As an initial matter, Daywalker fails to produce any competent evidence that the reasons are false or pretextual—much less the "substantial evidence" she is required to produce in order to create a fact issue at this stage. *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (to survive a motion for summary judgment, a plaintiff must show "a conflict of substantial evidence" on pretext). In the section of the response dedicated to her

---

[7] Daywalker alleges in passing that "the cat's paw theory would apply to this case" but she, again, does not cite to evidence in support of the conclusion ECF 125 at 34.

13

pretext argument, Daywalker makes several inflammatory allegations, including that the remediation is "false….fabricated . . .bunch of lies . . . and [] malicious and evil." ECF 125 at 35. But Daywalker cites *no evidence* in support of these allegations. *Id.* She simply states "[p]retext is obvious" but it is not so obvious that she could be bothered to attempt to explain with any specificity why or how the remediation is false or pretextual. Again, at this stage of the case, Daywalker cannot rely on allegations and conclusory statements to create a fact issue.

Further, while Daywalker smears the remediation as false, fabricated, and evil, she concedes that a large portion of it is actually true. Namely, Daywalker does not dispute that she had trouble timely completing notes during her time at UTMB. *See, e.g.,* ECF 125 at 25 ("Other than a few notes that were not completed within a specified time-period"). And her evaluations—even before Szeremeta became her program director—back up the undisputed evidence that she had performance issues with timely complete medical documentation. ECF 121 at D-1 (including an evaluation under Dr. McCammon that noted faculty concerns with timeliness of notes "in ways that may affect patient care."). Accordingly, given that the remediation was issued in part because of the faculty's concerns that she was not completing medical notes in a timely fashion, she cannot show that all of UTMB's reasons were false.

In addition, it is important to note that Daywalker explicitly abandoned her claim related to being placed on remediation. ECF 125 at 28, n. 3. Therefore, the question before the Court is not whether UTMB's legitimate reasons for placing Daywalker on remediation were false and pretextual, but rather whether UTMB's reasons for holding Daywalker back at a third-year academic level were false and pretextual. Notably, Defendants had additional reasons—separate and apart from the remediation—for their decision. Namely, in addition to

the reasons behind the remediation, UTMB decided to retain Daywalker at a third-year academic level based on (1) Daywalker's performance post remediation; and (2) the effects of taking months off for personal leave as UTMB's policy contemplates. ECF 121 at 27 (citing Ex. A-2) and Ex. C-1 at 14 ("Extended absences from the program may require additional time and training."). Daywalker does not address or attempt to rebut either of these separate reasons—instead she focuses entirely on the remediation. This failure, "alone [is] reason enough to dismiss the discrimination [and retaliation claims] because a plaintiff is required to rebut *each* nondiscriminatory reason articulated by his employer to carry his burden of demonstrating pretext." alone, forecloses Daywalker's claims. *McKinney v. Bolivar Med. Ctr.,* 341 Fed. Appx. 80, 82 (5th Cir. 2009) (emphasis added).

Further, even if UTMB was wrong in its judgment and determinations, it is not evidence of pretext or illegal animus. *See Little v. Republic Refining Co.,* Ltd., 924 F.2d 93, 97 (5th Cir. 1991). As the Fifth Circuit explained: "even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason. We do not try in court the validity of good faith beliefs as to an employee's competence. *Id.* Here there is ample evidence supporting UTMB's decision and Daywalker cites to no competent evidence of pretext. And UTMB's conclusion that Daywalker was not progressing academically should be afforded deference. *Regents of the Univ. of Mich. v. Ewing,* 474 U.S. 214, 225 (1982) ("When judges are asked to review the substance of a genuinely academic decision . . . they should show great respect for the faculty's professional judgment.").

## CONCLUSION

The Court should dismiss Daywalker's entire suit with prejudice.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division


/s/ *Esteban Soto*
TODD A. DICKERSON
Attorney-in-charge
Texas Bar No. 24118368
Southern District ID No. 3544329
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 |Fax: (512) 320-0667
Todd.Dickerson@oag.texas.gov

ESTEBAN S.M. SOTO
Chief of the Transportation Division
State Bar No.24052284
S.D. Tex. Admission No. 1014954
SHEKEIRA WARD
State Bar No. 24098575
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone (512) 475-4054
esteban.soto@oag.texas.gov
shekeria.ward@oag.texas.gov
**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

    I certify that that on November 19, 2021, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

                                           */s/ Esteban Soto*
                                           ESTEBAN SOTO
                                           Assistant Attorney General