IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DR. ROSANDRA DAYWALKER<br>*Plaintiff,*<br><br>v.<br><br>UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON, AND DR. BEN G. RAIMER, IN HIS OFFICIAL CAPACITY<br>*Defendants.* | §§§§§§§§§§ | No. 3:20-CV-00099 |

## DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S TRIAL WITNESSES

Defendants ask this Court to strike three individuals on Plaintiff's, Rosandra Daywalker's, witness list for trial: Drs. Resident 3, Resident 16, and Ben Raimer.[1] Resident 3 and Resident 16 should be struck as Daywalker did not list them as witnesses on her initial disclosures. These two residents were in the same residency class as Daywalker; thus, she was aware of their existence and has no excuse for failing to identify them as potential witnesses. And Defendants will be harmed by this belated disclosure as they had no reason to develop testimony regarding these witnesses and as the trial is set to begin in a few weeks.

Raimer is a quintessential apex witness. Daywalker sues Raimer in his official capacity as the University of Texas Medical Branch at Galveston ("UTMB")'s President. Yet Raimer did not obtain this position until September 2019—over a year after Daywalker resigned from

---

[1] Defendants file this motion and related exhibits with pseudonyms and redactions pursuant to the Court's current protective orders. *See* ECF 110.

1

UTMB. Raimer was not involved in the acts underlying Daywalker's claims, and Daywalker has no facts suggesting otherwise. Raimer should be struck as a witness as he does not have unique firsthand knowledge of this dispute.

Thus, Defendants request that this Court strike Resident 3, Resident 16, and Raimer from Daywalker's witness list.

**RELEVANT BACKGROUND FACTS**

I. **General Overview of Daywalker's Claims.**

Daywalker is a former resident in UTMB's Otolaryngology residency program. Daywalker claims she was discriminated and retaliated against by various UTMB physicians during her tenure, although her allegations mainly focus on Dr. Wasyl Szeremeta.[2] Daywalker asserts claims against UTMB under Title VII, and Section 504 of the Rehabilitation Act.[3] Daywalker also asserts a claim against Raimer in his official capacity under the Family and Medical Leave Act ("FMLA").[4]

II. **Daywalker did Not Identify Resident 3 and Resident 16 as Potential Witnesses in this Dispute.**

Daywalker now claims that Resident 3 and Resident 16 are relevant as comparators, as they were allegedly treated more favorably than herself.[5] Resident 3, Resident 16, and Daywalker were in the same residency class, meaning they all started their UTMB Otolaryngology residency at the same time.[6] These residency classes are small, generally

---

[2] *See* ECF 18, ¶¶ 10–26.
[3] *See, e.g.*, *id.* at ¶ 1.
[4] *See e.g.*, *id.* at ¶ 1, n.1.
[5] *See* ECF 129, at 4–6.
[6] *See* Dkt. 129 at 4.

2

comprising of two or three residents per program year.[7] Daywalker would have been aware of the other residents in her class when she filed the lawsuit.

Daywalker did not list Resident 3 and Resident 16 as potential witnesses on her initial disclosures.[8] She now claims that Resident 3 and Resident 16 are comparators for purposes of her claims.[9] Yet Daywalker did not identify either of these two individuals when asked in an interrogatory to name all UTMB employees that she contends were similarly situated to herself for purpose of her claims.[10]

### III. Raimer was Not Involved in the Acts Underlying Plaintiff's Claims.

Daywalker sued Raimer solely because he was UTMB's Interim President at the time of the lawsuit. Raimer assumed this position in September 2019,[11] nearly a year after Daywalker resigned from the residency program.[12] Raimer was not involved in the acts underlying Daywalker's claims, and she has no facts suggesting otherwise.

### IV. Daywalker Will Not Remove Resident 3 and Resident 16 from Her Witness List

On December 16, 2021, Daywalker produced her preliminary trial witness list.[13] Thereafter, when Defendants' counsel asked whether she intended to remove Resident 3, Resident 16, and Dr. Raimer from her list, her counsel stated she didn't know and indicated she would maintain them on her witness list until the Court issued a ruling on Daywalker's

---

[7] *See Current Residents*, UTMB, https://www.utmb.edu/oto/medical-education/current-residents (last visited Jan. 24, 2022).
[8] *See* Ex. A.
[9] *See, e.g.*, ECF 144, 1–2.
[10] *See* Ex. B, Plaintiff's Response to Interrogatory No. 3 (identifying only Resident 23).
[11] *About the President*, UTMB, https://www.utmb.edu/president/home/about-dr-raimer (noting also that Raimer was formally approved as UTMB's President, thus removing the "interim" from his title, in October 2021) (last visited Jan. 24, 2022).
[12] *See, e.g.*, ECF 18, ¶¶ 22–25.
[13] *See* Ex. C, Plaintiff's Witness List (preliminary).

motion for reconsideration.[14] But her reconsideration motion, which asks the Court to reconsider its interpretation of a document production request, does not overcome the issue of her untimely disclosure of Residents 3 and 16 as potential trial witnesses.[15] Even as trial approaches, Daywalker's counsel has demonstrated that she intends to continue to disregard the basic tenets of discovery gatekeeping despite the clear requirements of Rule 26 on initial disclosures and the cautioned consequences of Rule 37 when a party fails to provide them. This is exactly the kind of "blind man's bluff" game that the Rules were designed to prevent.

## ARGUMENT

**I.  Daywalker's Failure to Identify Resident 3 and Resident 16 on Her Initial Disclosures is Neither Substantially Justified Nor Harmless.**

Daywalker did not list Resident 3 or Resident 16 as potential witnesses in her initial disclosures.[16] As such, she is barred from calling these residents at witnesses unless she can show that her "failure was substantially justified or is harmless."[17] This analysis turns on four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose."[18] Daywalker cannot meet these factors.

*Importance of the Evidence:* Daywalker has no meaningful evidence suggesting that Resident 3 and Resident 16 were "nearly identical" to herself so to make them proper

---

[14] *See* Ex. D.
[15] *See, e.g.,* ECF 150.
[16] *See* Ex. A.
[17] *See* Fed. R. Civ. P. 37(c)(1); *Avina v. JP Morgan Chase Bank, N.A.*, CIV.A H-08-1885, 2010 WL 518932, at *1 (S.D. Tex. Feb. 1, 2010) ("The burden is on the party that did not comply with Rule 26 to show that the failure to comply was substantially justified or harmless.").
[18] *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

comparators.[19] Daywalker has a unique history of performance issues: poor performance reviews from multiple faculty members, evidence of possible fraudulently altered medical notes, continued timeliness and professionalism issues, etc.[20] Many of these problems persisted even after she was placed on remediation.[21] Soon after being placed on remediation, Daywalker asked for four months off, which UTMB granted.[22] Daywalker then resigned on her first day back from leave.[23] There is no meaningful evidence suggesting that Resident 3 and Resident 16 shared Daywalker's unique history of performance and disciplinary issues so to make them proper comparators in this case.[24] This factor favors Defendants.

*Prejudice to UTMB:* Early in this litigation, Defendants asked Daywalker to identify all comparators, and she only identified Dr. Resident 23.[25] Defendants thus did not meaningfully prepare for the possibility that Resident 3 and Resident 16 would be deemed comparators and called as witnesses in this case. If allowed to testify, Defendants would need to speak to (and possibly depose) these two residents, inspect their personnel files, and discuss their performance with other UTMB faculty members. This will cut into Defendants' planned trial preparation and could have been done far more efficiently and less urgently had Daywalker simply complied with Rule 26(a). This factor favors Defendants.

---

[19] *See, e.g.*, *Lopez v. Kempthorne*, 684 F.Supp.2d 827, 856 (S.D. Tex. 2010) (explaining the standard applied to determine whether an employee is a proper comparator); *Hockman v. Westward Comm., LLC*, 282 F.Supp.2d 512, 527–28 (E.D. Tex. 2003) (same).
[20] *See* ECF 121, 11–17.
[21] *See id.* at 13–17.
[22] *Id.* at 16–17.
[23] *Id.* at 17–18.
[24] *Id.* at 22–23, ECF 128 at 11–12.
[25] *See* Ex. B, Plaintiff's Response to Interrogatory No. 3.

*The Possibility of Curing the Prejudice by Granting a Continuance:* As explained above, Defendants' prejudice largely stems from their need to investigate issues pertaining to these newly identified witnesses, which would cut into Defendants' trial preparation. Continuing the trial is not a viable solution. Defendants put various plans into motion based on the Court's statement that the trial would begin on March 7, 2022. Continuing the trial would disrupt these plans and negatively impact Defendants' witnesses, many of whom are surgeons with busy schedules. This factor favors Defendants.

*Daywalker's Explanation for Her Failure to Disclose:* Resident 3 and Resident 16 appear to be the only other individuals in Daywalker's residency class.[26] As such, Daywalker was surely aware of their existence when she drafted her initial disclosures and interrogatory responses. Daywalker has no excuse for her belated identification of these two individuals. This factor favors Defendants.

As shown above, all four factors favor Defendants. This Court should bar Daywalker from calling Resident 3 and Resident 16 as witnesses at trial due to her failure to identify them on her initial disclosures.

## II. Raimer is an Apex Witness with No Unique Firsthand Knowledge of this Dispute.

Courts have been reluctant to subject high-ranking officials, also called "apex" officials, to the burdens of litigation absent a good reason for doing so. The concern is obvious. Due to their high-ranking positions, apex officials are more likely than ordinary witnesses to: (1) have important jobs; (2) have significant constraints on their time; and (3) be named in

---

[26] *Supra*, pgs. 2–3.

lawsuits.[27] Allowing unchecked legal intrusion into apex officials' affairs "would render their time remaining for government service significantly diluted or completely consumed."[28] Thus, such executives generally must have "unique personal knowledge" about the matter in question to be compelled to testify.[29] This requirement, often applied in the context of compelled deposition testimony, should apply equally to compelled trial testimony.[30]

Raimer is an apex official deserving of protection. He is the President of UTMB,[31] a public institution with over 13,000 employees and nearly 2.5 billion in revenue.[32] He has no personal knowledge, much less "*unique* personal knowledge," of the issues underling this case, a point Daywalker cannot meaningfully dispute.[33] Daywalker has no reason to call Raimer as a witness in this case other than to coerce UTMB into settling the matter by harassing its uninvolved President. This Court should not allow such gamesmanship.

This, of course, would be a preliminary ruling. If, at trial, Daywalker shows a justifiable reason for Raimer's testimony, this Court would be free to reconsider. But she won't be able to make this showing. And Raimer should not have to prepare for and attend a trial on matters he had nothing to do with.

---

[27] *See, e.g.*, *In re Guzman*, 2:16-CV-00303, 2017 WL 2210519, at *2 (W.D. Tex. May 19, 2017); *K.C.R. v. County of Los Angeles*, CV 13-3806 PSG SSX, 2014 WL 3434257, at *5 (C.D. Cal. July 11, 2014).
[28] *United States v. Wal–Mart Stores, Inc.*, No. CIV.A. PJM–01–1521, 2002 WL 562301, at *1 (D. Md. Mar. 29, 2002)
[29] *See, e.g.*, *Robinson v. Nexion Health at Terrell, Inc.*, 3:12-CV-03853-L-BK, 2014 WL 12915533, at *2 (N.D. Tex. Apr. 16, 2014).
[30] *See, e.g.*, *Pinn, Inc. v. Apple Inc.*, SA19CV01805DOCJDE, 2021 WL 4775969, at *3 (C.D. Cal. Sept. 10, 2021) ("The 'apex doctrine' is usually applied to depositions but can also be applied to protect a senior executive from being compelled to appear at trial.").
[31] *About the President*, UTMB, https://www.utmb.edu/president/home/about-dr-raimer (last visited Jan. 24, 2022).
[32] *UTMB Facts and Figures*, UTMB, https://www.utmb.edu/facts/ (last visited Jan. 24, 2022).
[33] *Cf.* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

## CONCLUSION

For the reasons above, Defendants request that this Court strike Resident 3, Resident 16, and Raimer from Daywalker's witness list and bar her from calling these witnesses at trial.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

/s/ *Shekeira Ward*
TODD A. DICKERSON
Attorney-in-charge
Texas Bar No. 24118368
Southern District ID No. 3544329
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | Fax: (512) 320-0667
Todd.Dickerson@oag.texas.gov

ESTEBAN S.M. SOTO
Chief of the Transportation Division
State Bar No.24052284
S.D. Tex. Admission No. 1014954
SHEKEIRA WARD

>State Bar No. 24098575
>P.O. Box 12548, Capitol Station
>Austin, Texas 78711-2548
>Telephone (512) 475-4054
>esteban.soto@oag.texas.gov
>shekeira.ward@oag.texas.gov
>COUNSEL FOR DEFENDANTS

### CERTIFICATE OF CONFERENCE

I conferred with Plaintiff's counsel about this matter on January 27, 2022. I asked Plaintiff's counsel to provide us with a definitive answer, by January 31, 2022, on whether she will voluntarily refrain from calling the witnesses in question at trial. Plaintiff's counsel did not respond to this request as of the date of this filing.

>*/s/ Shekeira Ward*
>Shekeira Ward

### CERTIFICATE OF SERVICE

I certify that that on February 1, 2022, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

>*/s/Shekeira Ward*
>SHEKEIRA WARD
>Assistant Attorney General